Ralph H. Brubaker, Individually and as Administrator with Will Annexed of the Estate of Berenice M. Brubaker, Deceased, Respondent, v. State of New York et al., Appellants. (Claim No. 34735.)

Third Department, January 16, 1963.

*Louis J. Lefkowitz, Attorney-General (Julius L. Sackman* of counsel), for State of New York, appellant.

*Thomas F. Moore, Jr., Edward L. Ryan, Scott B. Lilly* and *Lewis R. Bennett* for Power Authority of the State of New York, appellant.

*Costello, Cooney & Fearon (George R. Fearon* and *Vincent A. O'Neil* of counsel), for respondent.

Bergan, P. J. By a series of four appropriations running over a period of two years the State of New York took on behalf of

the State Power Authority for St. Lawrence Seaway and power transmission purposes fee and permanent easement interests in the lands of claimant's testatrix in St. Lawrence County near Massena.

Two main questions arise on appeal: (a) whether the highest and best use of the land was for industrial purposes as the Court of Claims found; (b) whether as to a portion of the takings claimant was entitled to the benefit of enhancement of value of the property by virtue of the commitment of the United States to the Seaway project within the rule in *United States* v. *Miller* (317 U. S. 369) as applied in New York in *Andrews* v. *State of New York* (11 A D 2d 599, affd. 9 N Y 2d 606, cert. denied 368 U. S. 929).

Claimant's property consisted of 365 acres of unimproved land, two miles northeast of Massena. It was bisected by Middle Road, a two-lane concrete highway. All of the 183.25 acres north of this road was appropriated in fee by the first taking May 19, 1955 and dikes and other Seaway project works were erected on it. The Court of Claims has allowed $32,000 in damages for this parcel. Although this portion of the property was zoned for agricultural usage, the court found, as it has been noted, that the best use of the land was for industrial purposes.

The court, however, held that claimant had not met the burden of proof of showing (*Fitzgerald* v. *State of New York*, 9 A D 2d 486) that the tract north of the Middle Road was not within the probable taking for the Seaway project and hence he was not entitled to enhancement of value resulting from this project.

The State argues, in the first place, that the award is basically excessive because of the character of all the land; but we conclude that the finding that the best use of the land would be for industrial purposes is warranted by the record. The land north of the Middle Road was zoned for agricultural use; that south of it for residential use. The court's decision reflected this actual difference in zoning; but there is no evidence the land could not be rezoned (*Masten* v. *State of New York*, 11 A D 2d 370, affd. 9 N Y 2d 796; *City of Albany* v. *State of New York*, 16 A D 2d 163).

The court on such a record as this could consider the economic and industrial growth of the area; the fact the land lay near Massena and that it was immediately adjacent to the plant of the Aluminum Company of America. All of the land lying south and west of claimant's property was owned by the Aluminum Company which had two operating plants on its property. A portion of the north side was bounded by property of Niagara Mohawk Power Corporation.

Respondent argues that the size of claimant's property and the nature of its terrain as well as its location made it especially suitable for industrial uses; that in 1955 before any taking it consisted of more total acreage than the nearby fenced area occupied by the Plancor factory of the Aluminum Company. We find the award of $32,000 for the fee taking of May 19, 1955 to be within reasonable bounds.

Two years after the first fee taking, two more appropriations were made in the area south of Middle Road, one April 1, 1957, a parcel of 25.34 acres taken in fee reserving an easement of usage to the prior owner only; and the other on May 1, 1957, a parcel of 55 acres taken in easement. For the first, an award of $39,750 has been allowed; for the second, $27,700.

The Court of Claims found the value of the land north of the Middle Road to be about $175 an acre; that south of it about $500 an acre. Although some consideration was given to the difference in zoning in the two areas, the main reason for the greatly higher valuation placed on the south area was that the court found claimant was there entitled to the enhancement of value due to the Seaway project within the rule of *Miller*. This becomes one of the main issues on appeal.

The claimant's property appeared on maps made by United States engineers in 1942 in connection with the Seaway project and there were descriptions and appraisals of it by the engineers. But there is no proof that it had been proposed at that time to flood all of the property or how all of it would have been used in the Seaway project or its related power transmission; and as the plan actually developed the only part taken or required for the Seaway was the tract north of Middle Road which was flooded and used for dikes. A map prepared by Federal engineers approved May 13, 1954 shows no contemplated occupation of land south of the Middle Road.

The need to acquire rights in the two parcels in dispute in the land south of the Middle Road was the result of a subsequently developed concern for power transmission. The record fully demonstrates that when the north tract was taken May 19, 1955 the entire Seaway project could have been completed and was in fact completed without any need for any more of claimant's land.

The appropriation of the 25.34-acre parcel two years later on April 1, 1957 was for the purpose of supplying electrical transmission facilities to the Aluminum Company and the rights acquired were later turned over to that company; the permanent easement acquired on May 1, 1957 was also for electrical power transmission lines serving both the Aluminum Company plant and as a transmission unit for power elsewhere.

These subsequent takings could well be regarded, as the court found, not to have been within the probable scope of the Seaway project, but to have been implementations of electrical service in connection with the project conceived as well as executed later than the project itself.

It is, of course, true, as the State argues, that the whole project was for power development as well as for Seaway purposes; but the manner and route of transmission of power created by the project were not integrated parts of the whole project; nor spelled out in the original plans. These depended on variable factors and later judgments by the Power Authority and it is clear that these judgments might well have followed other directions.

The contract to sell the Aluminum Company power was not consummated until July, 1955, after claimant's north tract had been taken for Seaway purposes. There followed an effort by the Aluminum Company to buy rights for power transmission in claimant's land south of the Middle Road. The failure to bring this about resulted in the acquisition of the rights by eminent domain through joint arrangement with the Power Authority and the corporation.

The Power Authority could have chosen other routes than those using claimant's land. The "most direct route" of a transmission line is not necessarily the one that will be used; and the decision to use this one was the result of a succession of later events, including the negotiation of a contract and a decision how best to carry it out.

All this seems to us to justify the finding of the Court of Claims that the land in issue south of the Middle Road was not within the probable scope of the general Seaway project. Rather, it would seem that the land was adjacent land brought in by a "subsequent enlargement" of the project within the language of *United States* v. *Miller* (317 U. S. 369, 377, *supra*). Specifically in *Andrews* v. *State of New York* (9 N Y 2d 606, 608, *supra*) the Court of Appeals treated the construction of a power line as being a subsequent enlargement of the Seaway project within the rule laid down in *Miller*.

The enhancement of value of the property south of the Middle Road by the Seaway project justified the finding of its value to be $500 an acre and on the whole supports the awards of $39,750 and $27,700 respectively for the appropriation of the two parcels. These takings cut off from access to a crossroad a 51-acre parcel of claimant's property which has been found consequently damaged to the extent of 95% of its value. An award of $27,075 was made for this damage.

One of the parcels taken reserved merely the present owner's right of access, not transferable, and thus for market value purposes the 51-acre parcel was left without access. We agree that the consequential damage to it was substantial and we cannot say that the view of the Court of Claims that it was damaged to the extent of 95% of its value is unreasonable.

The judgment should be affirmed, with costs.

COON, GIBSON, HERLIHY and REYNOLDS, JJ., concur.

Judgment affirmed, with costs.